IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

WILBUR L. MEDLEY, III,        )
                                   )
          Petitioner,     )
                                   )
    v.                   )     C.A. No. 23-672 (CFC)
                                   )
PHILIP PARKER, Warden, and   )
ATTORNEY GENERAL OF THE    )
STATE OF DELAWARE,        )
                                   )
         Respondents.   )

---

Wilbur L. Medley, III.  Pro se Petitioner.

Brian L. Arban, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

---

**<u>MEMORANDUM OPINION</u>**

June 26, 2026
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

Pending before the Court is Petitioner Wilbur L. Medley, III's Petition and Amended Petition under 28 U.S.C § 2254 for a Writ of Habeas Corpus (collectively referred to as the "Petition"). (D.I. 1; D.I. 6) Respondents filed an Answer in opposition and Petitioner filed a Reply and Supplements. (D.I. 13; D.I. 18; D.I. 19; D.I. 20; D.I. 22) For the reasons discussed below, the Court denies the Petition.

## I.   BACKGROUND

> On March 1, 2019, Medley was arrested for a burglary committed on February 22, 2019. He posted bond and was released on March 13, 2019. Medley was detained for other cases and violations of probation from March 19, 2019 through April 28, 2019, June 9, 2019 through November 9, 2020, and June 16, 2021 through June 22, 2021.
>
> On April 15, 2019, a grand jury indicted Medley for second-degree burglary, theft, second-degree conspiracy, and criminal mischief. Several continuances were granted in 2019 so that Medley could undergo a psychological evaluation and the parties could work on a global resolution of this case and other cases pending against Medley, including Cr. ID Nos. 1901013794 and 1906005528 and violations of probation in Cr. ID Nos. 1008025826, 100901420, and 1009005821.

*Medley v. State* ("*Medley 2024 Appeal*"), No. 149, 2024, 2024 WL 5103450, at *1 (Del. Dec. 12, 2024) (paragraph numbers omitted).

> On June 22, 2021, Medley pled guilty to Burglary in the Second Degree pursuant to a plea agreement. The State entered a *nolle prosequi* on the remaining charges. The

1

State agreed to recommend a sentence of eight years of Level V incarceration, suspended after two and one-half years for 18 months of Level III probation. The Plea Agreement was silent as to credit time. In his [Truth-In-Sentencing Guilty Plea Form], Medley stated that he "freely and voluntarily decided to plead guilty" to the charge, that he had not "been promised anything that is not stated in [his] written plea agreement," and that no one "promised [him] what [his] sentence [would] be." During the colloquy, Medley confirmed that the Plea Agreement was accurate and he agreed to it knowingly, intelligently, and voluntarily. The judge accepted the plea of guilty and proceeded to impose the recommended sentence. While doing so, the judge asked the criminal case manager "Nick, what's his effective date?" The clerk responded, "We will make it effective today with 210 days of credit." That was the first mention of credit time during the sentencing hearing. The judge then sentenced Medley to the recommended sentence, giving credit for 210 days previously served. Neither the State nor the defendant questioned the number of credit days during that court appearance.

*Medley v. State* ("*Medley 2022*"), 281 A.3d 29, 34 (Del. 2022) (footnotes omitted).[1]

Between June 23, 2021 and June 29, 2021, [Department of Correction ("DOC")] employees and Medley's counsel emailed the Superior Court about Medley's credit time. Based on information provided by Medley's counsel, the Superior Court issued an amended sentencing order on June 25, 2021 that increased Medley's credit time to 576 days. After DOC advised that their records showed that

---

[1] The Delaware state court incorrectly identified Medley's statements as being made during his plea colloquy. The quoted statements were affirmations made in the Truth-In-Sentencing Guilty Plea Form, which was discussed during the plea colloquy. (D.I. 14–29 at 3; D.I. 14–60 at 1-3) The quoted portion of the state court opinion has been modified to accurately reflect the correct source of Medley's statements by putting the source in brackets.

2

> most of that time was attributable to other cases and that Medley had only been held for this case between March 1, 2019 through March 13, 2019, the Superior Court issued a second amended sentencing order on June 29, 2021 that reduced Medley's credit time to thirteen days.
>
> On September 17, 2021, Medley's counsel filed a motion for modification of sentence to include 576 days of credit time. The State did not oppose the motion as long as any credit time was not applied in more than one case. The Superior Court denied the motion, holding that Medley had been credited with this time in an August 27, 2021 sentencing order in a different case. Medley's counsel appealed.
>
> While the appeal was pending, Medley filed a *pro se* motion for postconviction relief under Superior Court Criminal Rule 61 and other *pro se* motions. The Superior Court stayed those motions pending resolution of his appeal. On July 12, 2022, [the Delaware Supreme] Court concluded that Medley was only entitled to thirteen days of credit time in this case and affirmed the Superior Court's denial of his motion for sentence modification.

*Medley 2024 Appeal*, 2024 WL 5103450, at \*1-2 (footnotes and paragraph numbers omitted). In May 2023, Medley filed another motion for postconviction relief under Delaware Superior Court Criminal Rule 61. *See id.* at \*2. The Delaware Superior Court considered Medley's two motions for postconviction relief and his pro se motion for ineffective assistance of counsel as one "Consolidated Motion." *See State v. Medley* ("*Medley 2024*"), ID No. 1903000471, 2024 WL 1330005, at \*1 n.1 (Del. Super. Ct. Mar. 28, 2024). In the Consolidated Motion, Medley raised the following claims: (1) ineffective assistance of counsel ("IAC") (a) for incorrectly advising him as to the amount of credit time he would receive and (b) for being unresponsive and

3

misadvising him as to his direct appeal rights; (2) the Delaware Superior Court violated his due process rights by delaying resolution of his initial postconviction motions; (3) the State breached the plea agreement; and (4) the trial court erred in failing to suppress evidence. *See id.*; D.I. 14–44; D.I. 14–45; D.I. 14–49. On March 28, 2024, the Superior Court denied the Consolidated Motion. *See id.*

While the Consolidated Motion was pending, Medley filed the instant habeas petition in June of 2023, followed by a memorandum and an amended petition. (D.I. 1; D.I. 4; D.I. 6) In his Petition, Medley raised five claims for relief. Specifically, he alleged that (1) the Delaware Superior Court violated his due process rights by failing to take action on his postconviction motions (D.I. 1 at 6; D.I. 4 at 2-7; D.I. 6 at 4-10; D.I. 7 at 1; D.I. 18 at 11-12); (2) the Delaware Superior Court violated his due process rights by amending his sentence when he was not present in court (D.I. 1 at 8; D.I. 4 at 7; D.I. 6 at 12; D.I. 18 at 1, 10; D.I. 19 at 1-2, 5, 7; D.I. 22 at 1-2); (3) his lawyer provided IAC by (a) incorrectly advising him about his appeal rights and not filing a direct appeal of his sentence, (b) failing to inform the Superior Court about an alleged oral agreement to apply 576 days of credit time to his sentence, in violation of Delaware Superior Court Criminal Rule 11(e)(2) ("Rule 11(e)(2)"), and (c) incorrectly advising him that he would receive 576 days of credit time when he pleaded guilty (D.I. 1 at 9; D.I. 4 at 1, 3; D.I. 6 at 10-12); (4) the State violated Rule 11(e)(2) by not informing the Superior Court about the

4

alleged oral agreement for credit time (D.I. 4 at 1; D.I. 22 at 2); and (5) the State did not fulfill its obligations under the plea agreement (D.I. 4 at 1; D.I. 6 at 1).

On April 15, 2024, Respondents filed an Answer contending that the Petition was an impermissible mixed petition.[2] (D.I. 13) Medley filed a Reply and additional supplements. (D.I. 18; D.I. 19; D.I. 20) On October 18, 2024, the Court issued a Memorandum and Order concluding that the Petition constituted an impermissible mixed petition and providing Medley with the option of either deleting unexhausted Claims 1, 3(a), 3(c) and 5 or having his Petition dismissed without prejudice to enable him to refile a habeas petition once he satisfied the exhaustion requirement.[3] (D.I. 21) Medley responded and elected to delete his unexhausted claims.[4] (D.I. 22)

## II.    GOVERNING LEGAL PRINCIPLES

### A.    The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "to reduce delays in the execution of state and federal criminal sentences

---

[2]    Respondents Answer was filed after the Delaware Superior Court denied the Consolidated Motion but while Medley's appeal of that denial was pending in the Delaware Supreme Court.

[3]    Finding that dismissing the Petition would not jeopardize the timeliness of a future habeas petition, the Court concluded that a stay of the instant proceeding was not warranted. (D.I. 21 at 6-7)

[4]    After Medley elected to delete his unexhausted claims, the Delaware Supreme Court affirmed the denial of Medley's Consolidated Motion. *See Medley 2024 Appeal*, 2024 WL 5103450.

. . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal quotation marks and citations omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *See Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.    Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-45 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). The exhaustion requirement is based on principles of comity and requires a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *See, e.g.*, *O'Sullivan*, 526 U.S. at 845.

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See O'Sullivan*, 526 U.S. at 842-48; *Castille v. Peoples,* 489 U.S. 346, 350-51 (1989); *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (stating that petitioner meets technical requirements for exhaustion in this situation because state remedies are no longer available). Such claims, however, are procedurally defaulted. *See id.* at 750; *Lines*, 208 F.3d at 160. Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of

the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-65 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See Coleman,* 501 U.S. at 750-51; *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d. Cir. 1999). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *See id.* at 494 (internal quotations omitted).

Alternatively, a federal court may excuse a procedural default if a petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing that a "constitutional violation has probably resulted in the conviction

8

of one who is actually innocent." *Murray*, 477 U.S. at 496. The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. To establish actual innocence, a petitioner must present new, reliable evidence that was not presented at trial showing it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt. *See House v. Bell*, 547 U.S. 518, 536-38 (2006); *Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018); *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## C.   Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A claim has been "adjudicated on the merits" if the state court decision finally resolves the claim based on its substance, rather than on a procedural or other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(1),

9

(2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 209 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is contrary to clearly established federal law "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams*, 529 U.S. at 405). The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). A decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* An "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

10

*Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014) (recognizing Supreme Court has repeatedly restated holding describing "unreasonable application").

When reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that § 2254(e)(1)'s clear and convincing evidence standard only pertains to state-court determinations of factual issues and § 2254(d)(2)'s unreasonable standard applies to factual decisions). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). A habeas court cannot supersede the trial court's determination if "[r]easonable minds reviewing the record might disagree" about the finding in question. *See id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)).

## D.    Ineffective Assistance of Counsel

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate

11

that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *See Strickland*, 466 U.S. at 688. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689.

Under the second *Strickland* prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Further, it is well settled that "[s]olemn declarations in open court carry a strong presumption of verity" and create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). A court may deny an ineffective assistance of counsel claim by deciding only one of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697.

When determining whether a state court reasonably applied *Strickland* pursuant to § 2254(d)(1), the Court must review the state court decision through a

doubly deferential lens. *See Richter*, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *See id.* (internal citations omitted). The question becomes not whether counsel's actions were reasonable, but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *See id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *See id.* at 111-12. Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

## III.    DISCUSSION

In response to the Court's Order, Medley elected to delete Claims 1, 3(a), 3(c) and 5 and pursue Claims 2, 3(b) and 4. For the reasons that follow, the Court denies Claims 2, 3(b) and 4.

### A.    Claim 2

In Claim 2, Medley alleges that the Delaware Superior Court violated his due process rights by amending his sentence when he was not present in court. Respondents contend that Claim 2 is exhausted but procedurally defaulted. (D.I. 13

13

at 24-25) Medley raised this claim in his appeal of the denial of his motion to modify his sentence. In its decision affirming the denial of that motion, the Delaware Supreme Court explained:

> Medley's second contention is that the sentencing judge denied him the right to be present with his counsel during sentencing when the judge amended his sentence order to change his credit time from 576 days to 13 days without a hearing. "It is well established that a defendant has a fundamental right to be present at the imposition of a final sentence following a criminal conviction." This includes a resentencing that amends an original sentence.
>
> . . . . Since the issue now raised on appeal was not raised below, we believe it should be reviewed for plain error. Under plain error review, the matter complained of must be an error which is so clearly prejudicial to substantial rights that the fairness and integrity of the preceding is jeopardized. In this case, the only change to Medley's sentence order was the correction of his credit time to the 13 days, which the record shows beyond dispute to be the correct credit time. The amended order did not alter the Level V term of two and one-half years and did not change any special condition of supervision. Under these circumstances, we do not believe it can be said that the fairness and integrity of the proceeding was jeopardized. For this reason, we are not inclined to order a remand for a new sentencing.

*Medley 2022*, 281 A.3d at 34 (footnote omitted).[5]

---

[5]    The Delaware Supreme Court also addressed this issue in its subsequent affirmation of the denial of Medley's Consolidated Motion:

> Medley next contends that the Superior Court violated his right to due process by amending his sentence outside his presence . . . Medley did not assert a due process claim based on the amendment of his sentence in the proceedings

14

By explicitly applying the plain error doctrine, the Delaware Supreme Court applied Delaware Supreme Court Rule 8[6] ("Rule 8") and articulated a "plain statement" that its decision rested on state law grounds. *See Harris*, 489 U.S. at 263-64; *Morgan v. Pierce*, 83 F. Supp. 3d 563, 569 (D. Del. 2015). Rule 8 has consistently been found to be an independent and adequate state procedural rule effectuating a procedural default. *See Campbell v. Burris*, 515 F.3d 172, 182 (3d Cir. 2008); *Washington v. May*, 2022 WL 4598510, at *25 (D. Del. Sept. 30, 2022); *Morgan*, 83 F. Supp. 3d at 569. Therefore, the Court cannot review Claim 2 absent

---

> below, and we therefore review for plain error. [citing Delaware Supreme Court Rule 8] Plain error "is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice." There is no plain error here because this Court previously adjudicated (and rejected) Medley's claim that the Superior Court deprived him of his right to be present with his counsel for amendment of his sentence.

*Medley 2024 Appeal*, 2024 WL 5103450, at *3 (footnotes omitted).

[6] Rule 8 provides that "[o]nly questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented." Del. Sup. Ct. R. 8. In its decision affirming the denial of Medley's motion to modify, the Delaware Supreme Court did not explicitly identify Rule 8; however, it cited Delaware Supreme Court precedent providing that the plain error standard applies to claims subject to Rule 8. *See Medley 2022*, 281 A.3d at 34.

15

a showing of cause for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur if the claim is not reviewed.

Medley claims that he can demonstrate cause and prejudice on the grounds that he allegedly asked his attorney to file a direct appeal, that the Delaware Supreme Court's decision is "'contrary to' clearly established federal law," and that his claim involves a "right which is reviewed de novo not under the plain error standard." (D.I. 19 at 1-2) Even assuming without deciding that Medley can demonstrate cause, he cannot demonstrate prejudice – or that his claim would succeed under any standard of review – because his claim is without merit.

"[A]lthough defendants have an unqualified due process right to be present at sentencing (including resentencing), *United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000), they do not have a right to be present any time a criminal sentence is merely corrected." *Clark v. United States*, 76 F.4th 206, 212–13 (3d Cir. 2023); *see also United States v. Smith*, 551 F. App'x 698, 699 (4th Cir. 2014) (holding defendant does not have right to be present when his sentence is merely modified) (collecting cases). As correctly noted by the Delaware Supreme Court, "the only change to Medley's sentence order was the correction of his credit time to the 13 days . . . ." *Medley 2022*, 281 A.3d at 34. Therefore, Medley did not have a due process right to be present when the court amended the sentencing order. Furthermore, the Third Circuit has held that there is no constitutionally protected interest in an expectation

16

of release based on misapplied credit for time served and, therefore, the correction of the amount of credit time applied to a sentence cannot result in a due process violation. *Evans v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 650, 666 (3d Cir. 2011) (holding DOC's correction of credit time, without notice or hearing, nearly eleven years after sentencing did not violate due process). Accordingly, the Court concludes that Medley cannot demonstrate prejudice because Claim 2 is without merit. Medley also has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new, reliable evidence of his actual innocence.

For these reasons, the Court denies Claim 2.

## B.     Claim 3(b)

In Claim 3(b) Medley alleges IAC for violating Rule 11(e)(2) by failing to inform the Superior Court about an alleged oral agreement to apply 576 days of credit time to his sentence. Respondents contend that it appears Medley did not fairly present this claim in state court and that he should now be barred from doing so, thereby resulting in the claim being technically exhausted but procedurally defaulted. (D.I. 13 at 29-30) Upon review of the record, it appears that Medley did not reference Rule 11(e)(2) or allege that counsel failed to inform the trial court about the alleged oral agreement in his Consolidated Motion, but later made such references in supplements to the motion. (D.I. 14–54 at 3, 5; D.I. 14–56 5-6) When

17

the Delaware Superior Court denied the Consolidated Motion, it did not identify the allegations of Claim 3(b) as one of the issues raised therein nor did it discuss the allegations within the context of any of his other IAC claims. *See Medley 2024*, 2024 WL 1330005. After Respondents filed their Answer, however, the Delaware Supreme Court identified and addressed the substance of Claim 3(b) when it affirmed the denial of the Consolidated Motion. *See Medley 2024 Appeal*, 2024 WL 5103450, at *3.

Regardless of how the procedural status of this claim is viewed, it nevertheless fails because it lacks merit. Applying the two-prong test established in *Strickland*, the Delaware Supreme Court denied the claim on its merits, finding:

> [T]he record does not support Medley's claim of an enforceable agreement for him to receive 576 days of credit.
>
> During plea negotiations, Counsel asked the prosecutor if Medley would receive Level V credit time he had earned, and the prosecutor responded that he would. Counsel did not ask if Medley would receive credit for 576 days, and the prosecutor did not state that Medley would receive that amount of credit time. Medley claims that the parties had an oral agreement that he would receive credit for 576 days previously served, but he affirmed in the Truth-in-Sentencing Guilty Plea Form that he had not been promised anything that was not stated in his plea agreement. Neither side objected at sentencing when the case manager advised the judge that Medley was entitled to 210 days of credit time, not 576 days as Medley claims the parties had agreed. And finally, even if the parties agreed that Medley should receive credit for 576 days consisting mostly of time that he served in other cases, a

18

> "sentencing judge has no obligation to credit a defendant with more time than the defendant has served on the specific case."
>
> . . . .
>
> In her affidavit, Counsel stated that based on her experience she thought the court would apply credit from Medley's other pending cases to this case. She did not identify any oral agreement about credit time that should have been included in the plea agreement or disclosed to the Superior Court as Medley contends. The record does not support the existence of any such agreement.

See *Medley 2024 Appeal*, 2024 WL 5103450, at *2-3 (footnotes and paragraph numbers omitted). The Court finds that the Delaware Supreme Court correctly identified *Strickland* as clearly established federal law, reasonably applied it, and did not base its decision that Medley's IAC claim failed on an unreasonable determination of facts. The Delaware Supreme Court concluded that the record does not support Medley's claim that there was an agreement to apply 576 days of credit time to his sentence. Medley's claims to the contrary are belied by his own affirmation—in both his Truth-In-Sentencing Guilty Plea Form and his plea colloquy—that he was not promised anything that was not stated in his written plea agreement. (D.I. 14–29 at 3; D.I. 14–60 at 2) Medley has not overcome the presumption of correctness that this Court must afford to any of the findings of fact made by the Delaware Supreme Court under 28 U.S.C. § 2254(e)(1). Additionally, the state court's factual decisions are not objectively unreasonable. Medley's counsel's representation cannot be found to have fallen below an objective standard

19

of reasonableness for failing to inform the court about an agreement that did not exist. Viewing the Delaware Supreme Court's decision under the required "doubly deferential" lens, the Court concludes that the benchmark of whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard has been met. Having found that Medley's claim fails under *Strickland*'s first prong, the Court does not need to address prejudice.

For the reasons stated above, if Claim 3(b) is viewed as procedurally defaulted, Medley cannot show prejudice to overcome the default. Medley also has not satisfied the miscarriage of justice exception to the procedural default doctrine because he has not provided new, reliable evidence of his actual innocence

Accordingly, the Court denies Claim 3(b).

C.    **Claim 4**

In Claim 4 Medley alleges that the State violated Rule 11(e)(2) by not informing the Superior Court about the alleged oral agreement for credit time. In pertinent part, Rule 11(e)(2) provides "[i]f a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court." Compliance with Rule 11(e)(2), however, is an issue of state law that is not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (reemphasizing precedent that claims based on alleged state law errors are not cognizable on federal habeas review); *Croll v. Phelps*, 2012 WL 946769, at *4

20

(D. Del. Mar. 19, 2012) (holding claim that state court violated Rule 11 alleges error of state law that is not cognizable on federal habeas review); *Schmitz v. Carroll*, 2003 WL 22299028, at *7 (D. Del. Oct. 7, 2003) (same); *see also Mahan v. Cargor*, 2024 WL 4584556, at *3 (E.D. Mich. Oct. 25, 2024) (holding alleged violation of Michigan state court rule requiring on-the-record disclosure of plea agreements does not assert constitutional claim and is not cognizable on federal habeas review).

Therefore, the Court denies Claim 4.

## IV.   CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Additionally, if a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack,* 529 U.S. at 484.

The Court has concluded that the Medley's habeas claims do not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed above, the Court denies the instant Petition without an evidentiary hearing and without issuing a certificate of appealability.

The Court will issue an Order consistent with this Memorandum Opinion.